IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN NGUYEN**, | Case No. 3:21-cv-00977-IM |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **COLUMBIA RIVER PEOPLE'S UTILITY DISTRICT**, **JAKE CARTER**, **CRAIG MELTON**, **DEBBIE REED**, **ROB MATHERS**, **HARRY PRICE**, and **PHILIP S. GRIFFIN**, | |
| Defendants. | |

Christina E. Stephenson, Michael V. Owens, and Robert K. Meyer, Meyer Stephenson, 1 SW Columbia Street, Suite 1850, Portland, OR 97204. Attorneys for Plaintiff.

Nicholas Herman, Lower Columbia Law Group LLC, 52490 SE 2nd Street, Suite 100, Scappoose, OR 97056. Attorney for Defendants.

**IMMERGUT, District Judge.**

      Plaintiff John Nguyen brings this action against Defendants Columbia River People's

Utility District ("CRPUD"), Jake Carter ("Carter"), Craig Melton ("Melton"), Debbie Reed

PAGE 1 – OPINION & ORDER

("Reed"), Rob Mathers ("Mathers"), Harry Price ("Price"), and Philip S. Griffin ("Griffin"). Presently before this Court is Defendants' Motion for Partial Summary Judgment, ECF 17. For the reasons set forth below, this Court GRANTS summary judgment on Claim 5, Plaintiff's retaliation claim (ORS 659A.230).[1]

## BACKGROUND[2]

On May 18, 1987, Plaintiff began his employment at CRPUD, a publicly-owned utility that provides electric service to customers in Columbia County and a portion of northern Multnomah County, Oregon. ECF 22 at 8. Plaintiff held several management positions during his tenure and was eventually appointed to the role of permanent General Manager in 2017. *Id.* In July 2019, Plaintiff announced his intention to begin receiving his vested benefits under the Oregon Public Employees Retirement System ("PERS"). *Id.* On August 13, 2019, Plaintiff entered into a General Manager Agreement ("Agreement") that allowed Plaintiff to continue serving as General Manager and contemplated Plaintiff being retained long enough to work with his successor and complete specific projects. *Id.* at 9. The Agreement's duration was at will, but was otherwise set to last from December 1, 2019 through November 30, 2020, if not terminated. *Id.* On November 19, 2019, CRPUD's Board unanimously approved an option for either party to renew the contract for an additional one-year term by providing written notice to extend at least 120 days prior to the termination of the Agreement. *Id.*

---

[1] Defendants originally brought this Motion seeking summary judgment on Claims 4, 5, 7 and 8. As the Parties explain in their briefing, Defendants have withdrawn their request for summary judgment on Claim 4, ECF 25 at 1, and Plaintiff has conceded that summary judgment should be granted on Claims 7 and 8, ECF 22 at 30. Accordingly, this Court also grants summary judgment on these conceded claims.

[2] The following facts are taken from Plaintiff's Response to the Motion for Partial Summary Judgment, ECF 22.

Plaintiff later learned from Board members Melton and Mathers that Carter had a plan to use his influence as a Board member to have himself voted in as the next General Manager. *Id.* Plaintiff reported to Melton and Mathers that Carter's candidacy—concurrent with his service on the Board—was a conflict of interest. *Id.* Plaintiff reported these same concerns to Griffin, CRPUD's General Counsel. *Id.*

In February 2020, Plaintiff notified CRPUD of his decision to change the titles of various employee "supervisors" to "managers," to be consistent with their current management functions and duties. *Id.* Plaintiff informed CRPUD that there would be no impacts to the budget as a result of the title change. *Id.* Reed, Carter, and Melton criticized Plaintiff for not involving the Board in the decision-making process. *Id.* at 10. Carter reprimanded Plaintiff, stating that he was "deeply concerned" and "alarmed" at Plaintiff's handling of the personnel decision. *Id.* Following this admonishment over the title changes, Plaintiff claims he became deeply concerned that Board members were acting beyond their authority and involving themselves in personnel decisions. *Id.* Plaintiff advised the board members that they could be in violation of Oregon statutes as well as CRPUD's rules and regulations. *Id.* Plaintiff claims that Griffin defended the Board members' actions after Plaintiff reported his concerns. *Id.* Griffin's defense of the Board members contradicted the advice he provided to Plaintiff on similar matters that occurred in 2015. *Id.* When Plaintiff asked Griffin to explain this new position, Griffin ignored the request and advised Plaintiff that he should seek his own counsel if he had claims against Board members. *Id.*

On March 16, 2020, Plaintiff's personal attorney sent Griffin a letter notifying CRPUD of Plaintiff's concerns of retaliation for whistleblowing:

> State law prohibits employers from discriminating or retaliating against an employee who engages in protected activities such as reporting or resisting what he believes in good faith to be a violation of state or federal laws, rules, or regulations. As you know, Mr. Nguyen has engaged in such protected activities in

PAGE 3 – OPINION & ORDER

>the past year and is concerned that certain members of the CRPUD Board of
>Directors have retaliated and intend to further retaliate against him as a result.

*Id.* at 11. Plaintiff claims that this letter also served to notify CRPUD that Plaintiff was now represented by counsel related to his employment at CRPUD and advised CRPUD to preserve all evidence that may relate to Plaintiff's claims of retaliation against CRPUD. *Id.*

According to Plaintiff, after learning of his reports of retaliation, Board members discussed Plaintiff in private and were upset that Plaintiff had sought personal legal counsel and had made a retaliation complaint against them. *Id.* At the March 19, 2020 CRPUD Board meeting, Carter publicly reprimanded Plaintiff for his complaint of retaliation. *Id.* Plaintiff claims that Carter "attempted to recharacterize his interference into Plaintiff's day-to-day management of the utility as merely an attempt to seek 'clarification' from Plaintiff." *Id.* Carter stated that he was "extremely disturbed and disappointed" by Plaintiff's response, referring to Plaintiff as "damned thin skinned." *Id.*

On April 6, 2020, Plaintiff, through his legal counsel, offered a more detailed account of his whistleblower activity, his recent complaints regarding Carter's alleged conflict of interest, and his complaint against the Board for exceeding its authority in interfering with the day-to-day operations of the utility. *Id.* at 11–12. Plaintiff also reported further retaliation in response to his lawyer's March 16, 2020 letter including Carter's public reprimand of Plaintiff. *Id.* at 12. On July 7, 2020, Plaintiff executed his option to request the one-year extension in his Agreement. *Id.* Instead of providing Plaintiff the extension, the CRPUD Board voted on July 28, 2020 to deny Plaintiff's extension request and to cancel Plaintiff's contract. *Id.* Plaintiff's employment with CRPUD was terminated on August 31, 2020, three months prior to the one-year ending date of his contract. *Id.* On December 14, 2020, Plaintiff's counsel sent a notice of Plaintiff's claims against CRPUD to its current General Manager. *Id.* Plaintiff filed this action on June 30, 2021.

PAGE 4 – OPINION & ORDER

*Id.* at 14.[3]

## LEGAL STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

The evidence presented by the parties must be admissible. *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1065 (C.D. Cal. 2002) (citing Fed. R. Civ. P. 56(e)). Further, the non-moving party may not rest on conclusory or speculative evidence but rather must "set forth specific facts in support of [its] . . . theory." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979) (citing Fed. R. Civ. P. 56(e)).

---

[3] This Court notes that CRPUD filed suit against Plaintiff in state court alleging breach of contract and breach of fiduciary duty. ECF 22 at 12. The state court granted Plaintiff's request to dismiss the action for failure to state claim. *Id.*

## DISCUSSION[4]

The single issue before this Court is whether summary judgment should be granted on Plaintiff's retaliation claim against CRPUD under ORS 659A.230. Prior to his termination, Plaintiff claims that he reported criminal activity which had occurred at CRPUD and brought a civil proceeding against Defendants. ECF 22 at 25–30. Plaintiff argues that CRPUD violated the whistleblower retaliation provisions of ORS 659A.230 when it terminated his employment after he had engaged in these protected activities. *Id.*

**A. Bringing a Civil Proceeding Under ORS 659A.230**

Plaintiff argues that his pre-litigation correspondence with Defendants is sufficient to invoke the protection of ORS 659A.230. This Court disagrees and finds that Plaintiff's pre-litigation correspondence with his employer did not protect him from termination because this activity does not constitute having "brought a civil proceeding" under ORS 659A.230.

Plaintiff's employment was terminated on August 31, 2020, ECF 22 at 12, and the Parties do not appear to dispute that CRPUD took an adverse action against Plaintiff. At issue is whether "br[inging] a civil proceeding" under ORS 659A.230 encompasses Plaintiff's act of sending his employer a pre-litigation letter. Plaintiff did eventually institute a formal civil proceeding against Defendants on June 30, 2021. ECF 1. But Defendants argue that Plaintiff cannot invoke the

---

[4] Plaintiff argues that summary judgment is premature because Defendants filed the instant motion before the completion of discovery. ECF 22 at 16. Plaintiff requests that this Court deny the motion or defer its consideration until the completion of discovery. *Id.* While discovery does not close until September 30, 2022, ECF 27, this Court does not find that Plaintiff's request is justified under Fed R. Civ. P. 56(d). Rule 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). Plaintiff merely states that he has "reason to believe the record will grow substantially over the course of discovery." ECF 22 at 17. Plaintiff fails to adequately "explain what further discovery would reveal that is 'essential to justify [his] opposition'" *Program Eng'g, Inc. v. Triangle Publ'ns, Inc.*, 634 F.2d 1188, 1194 (9th Cir. 1980).

PAGE 6 – OPINION & ORDER

protection of the statute because the proceeding was not brought until approximately ten months after his August 31, 2020 termination. ECF 25 at 2.

This Court first considers the text of the statute. "Under this court's statutory interpretation paradigm, our task is to discern the intent of the legislature. In so doing, we first consider the text of the statute, in context." *State ex rel. Engweiler v. Cook*, 340 Or. 373, 378 (2006). ORS 659A.230 makes it unlawful for an employer to:

> discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith *brought a civil proceeding against an employer* or has testified in good faith at a civil proceeding or criminal trial.

*Id.* (emphasis added).

This Court finds that ORS 659A.230 contemplates that a potential plaintiff already have filed a complaint or initiated some kind of concrete legal action before invoking the protection of the statute. The statute's use of the term "civil proceeding" suggests some kind of formal legal action beyond just sending a party a threat to sue. Additionally, the word "brought" leaves little room for an inference that the statute protects a plaintiff who only intends to eventually file suit.[5]

This Court's analysis comports with the reasoning of other courts that have approached

---

[5] This Court notes that it does not construe the term "civil proceeding" under this prong so narrowly that complaints to an administrative body would not be covered. Or. Admin. R. 839-010-0140, promulgated under ORS 659A.230, states that a "civil proceeding" includes a "proceeding before an administrative agency or a court." *Id.* The regulation further states that bringing a civil proceeding includes "filing complaints to or cooperation with administrative agencies as well as courts." *Id.* Under this regulation, "[a]n employee is considered to have initiated a civil proceeding when the employee has contacted an administrative agency the employee believes in good faith to have jurisdiction and the ability to sanction the employer." *Id.* The regulation also states that an employee is protected if "[t]he employer believes that the employee has engaged in the civil proceedings acts described above." *Id.*

PAGE 7 – OPINION & ORDER

this question of interpretation. For example, in *Carrion v. Keen, Inc.*, the plaintiff alleged that her termination was motivated by retaliatory animus for her threat to file a Bureau of Labor and Industries ("BOLI") complaint. No. 3:14-CV-454-PK, 2015 WL 9659974, at *20 (D. Or. Oct. 16, 2015), report and recommendation adopted, No. 03:14-CV-00454-PK, 2015 WL 9308259 (D. Or. Dec. 20, 2015). The court found that "the protections of Section 659A.230 come into play only where an employee . . . actually initiated civil proceedings against her employer, and are not triggered when an employee *threatens* to bring an *administrative action* against her employer in connection with her employer's violation of civil law." *Id.* (emphasis in original); *see also Mantia v. Hanson*, 190 Or. App. 36, 42 n.3 (2003) (noting that the mere threat "to complain to occupational safety authorities . . . did not fall within the purview" of Oregon retaliation law). This Court acknowledges that Plaintiff's act of sending CRPUD a letter notifying it of possible litigation could demonstrate that Plaintiff was preparing to file a civil action. Still, this Court cannot find that Plaintiff's pre-litigation correspondence constituted anything more than a mere threat to sue.[6]

In support of Plaintiff's argument that a civil proceeding begins when one party sends pre-litigation correspondence with a statement of its potential claims, Plaintiff draws from Oregon privilege law to argue that pre-litigation correspondence is "part and parcel of a judicial proceeding." ECF 22 at 26. For example, Plaintiff relies on *Wollam v. Brandt*, where the Oregon Court of Appeals found that an attorney's statements in a pre-litigation demand letter "were made in the course of a judicial proceeding" and entitled to the protection of privilege even

---

[6] Even if this Court were to agree that pre-litigation correspondence could satisfy the statute, Plaintiff's letter does not at all make clear that litigation was more than just merely contemplated. The letter simply reminds Defendant CRPUD that its actions could constitute violations of certain state and federal laws and that any evidence of unlawful conduct should be preserved.

PAGE 8 – OPINION & ORDER

though legal action was only a "distinct possibility if the parties were not able to reach a settlement." 154 Or. App. 156, 164 (1998).

Because *Wollam* recognized the existence of a privilege protection for these pre-litigation statements, Plaintiff claims that this same logic should apply to his retaliation claim. This analogy is not well taken. The issue in *Wollam* was not whether a civil proceeding had been brought or when a civil proceeding had begun. In fact, Plaintiff's own brief appears to concede *Wollam*'s acknowledgment that "legal action had not yet been brought." ECF 22 at 26 (quoting *Wollam*, 154 Or. App. at 164). Rather, the issue before the court was whether pre-litigation "[s]tatements made by an attorney in advance [or as part] of proposed judicial or quasi-judicial proceedings" were privileged. *Wollam*, 154 Or. App. at 164. Thus, *Wollam* does not provide guidance on whether Plaintiff's pre-litigation letter can be understood to initiate or commence a civil proceeding for the purpose of ORS 659A.230. Further, the central question of timing in privilege cases is not when a formal proceeding begins, but when the attorney-client relationship is formed. This Court declines to import rules developed in the specific context of the attorney-client privilege to Oregon whistleblower retaliation law.

Plaintiff raises the specter that denying his claim would functionally create a bar to relief for any plaintiff who is required to send a notice of claims to a public employer before filing a civil complaint. But Plaintiff cites no authority for the proposition that an employee required to file a notice of claims could not invoke the protection of ORS 659A.230. A plaintiff who happens to alert his employer to a potential lawsuit through the filing of a right to sue letter would still appear to be protected under the statute. Or. Admin. R. 839-010-0140.[7] Thus, the

---

[7] The BOLI regulations noted by Plaintiff provide further evidence that his interpretation of the statute is flawed. ECF 22 at 27. The regulations note that "bringing a civil action" includes "filing complaints to or cooperation with administrative agencies as well as courts." Or. Admin.

PAGE 9 – OPINION & ORDER

hypothetical that Plaintiff envisions does not appear to be supported. Plaintiff may caution against creating a system where a party would be forced to race to file suit before his employer could take an adverse action. Yet that concern is not evidenced here. Plaintiff sent his pre-litigation correspondence on March 16, 2020; was terminated on August 31, 2020; and filed suit on June 30, 2021. Accordingly, this Court rejects Plaintiff's argument that his pre-litigation correspondence entitles him to protection.

### A. Reporting Criminal Activity Under ORS 659A.230

Separate from the "brought a civil proceeding" prong of ORS 659A.230, Plaintiff also argues that he was terminated for reporting criminal activity. Without deciding whether Defendants' alleged misconduct constituted a criminal violation, this Court finds that the circumstances of Plaintiff's act of internal reporting are not sufficient to invoke the protection of the statute.[8]

Pursuant to ORS 659A.230, an employer may not take an adverse action against an employee who "has in good faith reported criminal activity by any person." Plaintiff claims that he is protected under the statute because he reported to Griffin and the Board his concerns about Carter's alleged conflict of interest and that Board members were exercising powers in violation of statute. ECF 22 at 29–30. Plaintiff centers his argument on defending his good faith belief that the alleged misconduct that occurred at CRPUD was in fact criminal. *Id.* 28–29. But Plaintiff fails to address the other core issue of whether the report itself was sufficient to satisfy the

---

R. 839-010-0140(1)(a). Pre-litigation correspondence between Plaintiff and his employer does not square with that definition.

[8] Plaintiff bases his claim of alleged criminal activity on ORS 162.405, ORS 244.040, and ORS 244.120. ECF 22 at 29. But as Defendant correctly notes, ORS 244.040 and ORS 244.120 are not criminal statutes. ECF 25 at 8. Rather, they are ethics statutes that provide civil and administrative penalties only.

PAGE 10 – OPINION & ORDER

statute.

Defendant argues that because Plaintiff's reports of alleged criminal activity were entirely internal, they are not protected by ORS 659A.230. There has been significant dispute in this district about whether internal reporting is sufficient to satisfy the statute. This Court finds Judge Mosman's decision in *Roche v. La Cie, Ltd.*, No. CV 08-1180-MO, 2009 WL 4825419 (D. Or. Dec. 4, 2009), to be instructive. In *Roche*, Judge Mosman explained that the question of whether a report under ORS 659A.230 is protected should not turn exclusively on a distinction between internal and external reporting. *Id.* at *7. Judge Mosman noted that the statute does not define the term "reported," but that its ordinary meaning does not necessarily demand that an external recipient be involved in the communication. *Id.* Looking next to the legislative purpose of the statute, the court found a strong public policy interest in encouraging citizens to assist in the enforcement of law. *Id.* The court reasoned that the term "contemplates some action that is 'intended to or likely to result' in a criminal or civil proceeding." *Id.* (internal quotation marks and citation omitted); *see also id.* ("Although external reports are more likely to meet this criteria than are internal reports, it does not follow that an internal report is necessarily unprotected.").

Applying the logic of *Roche*, this Court disagrees that Plaintiff's reports were intended to or likely to result in a criminal or civil proceeding. Even viewing the evidence in the light most favorable to Plaintiff, the record does not support a finding that his internal reports were protected. If Plaintiff truly intended his conversations with Griffin and the Board to result in criminal or civil enforcement, it is unclear why he did not contact law enforcement or a government agency about his concerns or insist that the Board do so. *Id.* at *8 (granting summary judgment and noting that the plaintiff whistleblower "never attempted to contact law enforcement or a government agency about his concerns, nor is there any evidence that he asked

[the internal report recipients] to do so on his behalf"). In the context of internal reporting, this Court finds that simply airing one's concerns or grievances in the hope that someone is spurred to action is not sufficient to constitute a report. By Plaintiff's own characterization of his interactions with Griffin and the Board, it was clear that his allegations of misconduct were not going to be taken seriously. Understanding that an external criminal investigation—let alone any kind of remedial action—was unlikely under these circumstances, Plaintiff could have immediately reported the alleged misconduct to either an external entity or an internal entity that would act. Further, it is unclear how Plaintiff could have seriously intended that a criminal proceeding result from his internal report when the alleged wrongdoers who were the subject of the report were some of the very same people to whom he directed his concerns.

While the instant facts differ from *Roche* in that Plaintiff reported directly to CRPUD's Board and General Counsel—as opposed to a lower-level human resources employee—this Court still finds this report deficient under the circumstances. *Roche*, 2009 WL 4825419, at *8. "At summary judgment, this [C]ourt need not draw *all* possible inferences in [Plaintiff's] favor, but only all *reasonable* ones." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) (emphases in original). The only reasonable inference from these facts is that Plaintiff was, "at most, indifferent about whether his concerns about criminal activity" reached an entity with the ability to take enforcement action.[9] *Id.* at *9. Not only is it unclear whether the alleged misconduct could form a good faith belief that there was criminal activity, Plaintiff has not shown any likelihood or intent that the report would culminate in a criminal or civil proceeding.

---

[9] Even if an initial report is entirely internal, *Roche*'s reasoning loses meaning if there is no way for the communication to reach an external entity with the power to enforce. *See Lamson v. Crater Lake Motors, Inc.*, 346 Or. 628, 640 (2009) (noting, in dicta, that ORS 659A.230(1) was not applicable because Plaintiff did not report the misconduct to an "entity with authority to take action to enforce the [statute]").

Accordingly, this Court finds that Plaintiff's reports of criminal activity do not entitle him to protection under the statute.

## CONCLUSION

This Court GRANTS Defendants' Motion for Partial Summary Judgment, ECF 17. Accordingly, summary judgment is granted on Claim 5 (Plaintiff's retaliation claim under ORS 659A.230). Summary judgment is also granted on Claims 7 and 8, which were conceded by Plaintiff.

**IT IS SO ORDERED.**

DATED this 12th day of August, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge